THE AMERICAN RAILROAD CO. OF PORTO RICO *v.* QUIÑONES.

APPEAL from the District Court of Mayagüez.

No. 402.—Decided March 8, 1910.

EXPROPRIATION—DEFINITE DESIGNATION OF PROPERTY TO BE EXPROPRIATED.—
Even where the construction of a branch road has been declared to be of public utility, in accordance with the Act of March 12, 1908, to amend the Expropriation Act of March 12, 1903, it is necessary that the land to be expropriated in order that the work may be carried out be definitely and particularly designated.

ID.—LAW IN FORCE AT THE TIME THAT COMPLAINT IS FILED.—The law in force at the time a complaint in the expropriation proceedings is filed must govern, and not the law in force at the time the declaration of public utility is made by the Executive Council.

ID.—REQUIREMENTS IN ORDER THAT DECLARATION OF PUBLIC UTILITY MAY BE MADE—DESIGNATION OF LAND TO BE EXPROPRIATED.—In accordance with the

foregoing doctrine, when a plaintiff in an action obtains from the Executive Council a declaration of public utility, which does not definitely designate the land to be expropriated, if, upon the filing of the complaint, the law in force requires that formality, he must resort to the Executive Council and secure a correction of the defect before filing his complaint.

ID.—DESIGNATION OF LAND—RIGHT OF PLAINTIFF.—It cannot be admitted, even under the Expropriation Act of March 12, 1903, that a school board or railroad company has the incontestable right arbitrarily to deprive a citizen of his property, to satisfy caprice or malice or for any other unjustifiable reason, when there is other property, more convenient and adequate, which might probably be secured for less money and without the necessity of resorting to expropriation proceedings.

ID.—DECLARATION OF PUBLIC UTILITY—HEARING OF INTERESTED PARTIES.—In accordance with the Expropriation Act of March 12, 1908, interested parties have a right to be heard in regard to the declaration of a public utility and the necessity for the expropriation, and the Executive Council must, upon making the declaration of public utility for a specific construction, particularly designate the property to be expropriated.

ID.—RAILROADS—RIGHT TO SELECT LANDS.—The Expropriation Act of March 12, 1903, does not grant railroad companies the right to select lands for their enterprises.

The facts are stated in the opinion.

*Mr. Eduardo Acuña* for appellant.

*Messrs. F. L. Cornwell and Fernando Vázquez* for respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On June 8, 1908, The American Railroad Co. of Porto Rico filed a complaint in the District Court of Mayagüez against Vicente Quiñones, the fundamental facts of which are the following:

1. That the plaintiff company is a corporation duly organized and incorporated under the laws of the State of New York, and duly authorized to do business in this Island under the laws of Porto Rico.

2. That it is operating a railway in this Island running from the city of San Juan to Ponce, with its branches and spurs, passing through the municipalities of Añasco, Mayagüez, San Germán and Lajas.

3. That on March 5, 1908, the Executive Council made an ordinance, approved by the Governor of Porto Rico on the

10th of said month and by the President of the United States on the 19th of said month of March, authorizing the plaintiff company to construct and operate a branch of said railway running from a point on its main line between the stations of San Germán and Hormigueros, running in an easterly direction to a point at or near the west bank of the Estero River, east of the town of Sabana Grande, a distance of about 14 kilometers, which ordinance is inserted in full in this allegation.

4. That the defendant, Vicente Quiñones, is the owner of a rural estate situated in *barrio* "Minillas," municipal district of San Germán, bounded on the north, east and west by lands belonging to the Estate of Mayoral Quiñones and on the south by the Río Grande.

5. That the plaintiff company has accepted the ordinance of March 5, 1908, and has complied with all the conditions imposed upon it thereby in order that it may proceed to construct the branch described, which among other estates crosses that of the defendant to the extent of a strip of land having an area of 2,844.40 square meters from a point adjoining lands belonging to the Estate of Mayoral Quiñones on the western boundary of the estate of the defendant to another point adjoining lands of the same estate on the eastern boundary of said estate.

6. That the plaintiff has repeatedly requested the defendant to sell it the said strip of land for a reasonable price and convey to it the title of ownership thereto, and he has always refused to do so.

7. That a reasonable price for the said strip of land is $75 and that the plaintiff is ready to pay said sum and has deposited it with the secretary of the court for the purposes prescribed by law.

In view of the facts stated, the complaint closes with the prayer that judgment be rendered condemning said land of Vicente Quiñones and granting the plaintiff an absolute title of ownership thereto with all the rights and privileges inher-

ent therein, upon payment of the reasonable value thereof, with the costs against the defendant.

In answering the complaint, Vicente Quiñones, because of a lack of information in general, denied all the facts on which it is based and alleged, among other facts, the following as new matter:

(*a*) That the declaration of public utility alleged by the plaintiff did not affect property of the defendant, who had not been summoned nor heard by the Executive Council or any other authority for purposes of such declaration, nor had it anywhere been published that the plaintiff, under his franchise, had necessarily to cross the estate in question, in order that the defendant might thus be in a position to assert his right in opposition to the declaration of necessity.

(*b*) That the franchise does not determine the estates or lands which are to be crossed and condemned for the construction of the railway.

(*c*) That neither the Executive Council nor any other authority has made any declaration of necessity for the condemnation of the estate of the defendant, which has been arbitarily selected by the plaintiff for said purpose from among the many comprised between the vague points indicated in the franchise as the initial and terminal points.

(*d*) That the land arbitarily selected by the plaintiff for the passage of the railway had been acquired by the defendant for the purpose of placing thereon, as he had, establishments for the manufacture of sugar having incurred considerable expense in this connection, in the purchase of machinery for the purpose of realizing such profits as were to be derived from grinding the sugar-cane of the planters of *barrio* "Minillas" of San Germán, and that the damages which the condemnation would cause him would not be offset by the payment of the small sum at which the plaintiff values the land occupied by the railway.

The defendant alleging, furthermore, the situation of his establishments for the manufacture of sugar and the prox-

imity of the railway thereto, the damages caused him and
the great effect it would have on his estate, filed a cross com-
plaint against the plaintiff company, praying that the con-
demnation in any event extend to the nine *cuerdas* of land of
which the strip claimed forms part, with the buildings and
machinery which they contain, and that the company indem-
nify him in the sum of $66,666.66 representing the damages
plus the value of the entire estate.

The trial having been had, the court rendered the follow-
ing judgment:

"In this case after a date for trial had been set by the court with
the consent of the parties, the trial was held on December 18, 1908,
the plaintiff and the defendant being represented by their respective
attorneys. After hearing the evidence submitted by them and listen-
ing to their oral arguments, the court reserved judgment until Decem-
ber 30, 1908, and on said date, having considered this case sufficiently,
holds, decrees and declares the defendant, Vicente Quiñones, forever
expropriated of the strip of land referred to in the complaint filed in
this case, the description of which is as follows:

"A tract or strip of land having an area of 2,844 meters and 40
centimeters square, running from southwest to northwest, forming a
curved line within the rural estate of the defendant, Vicente Qui-
ñones, called 'El Higuero,' situated in *barrio* 'Minillas,' in the munici-
pal district of San Germán, from a point on its western boundary with
the Estate of Mayoral Quiñones to another on the eastern boundary
of said estate with the property of said estate, which tract or strip
of land is bounded on the north and south throughout its length by
lands of the defendant, Vicente Quiñones, and on its eastern and west-
ern extremities, by the strip or tract of land along which runs the
branch line of the railway of the plaintiff, The American Railroad
Co. of Porto Rico, which starts from a point on its main line, in an
easterly direction and stops at another point near the town of Sabana
Grande.

"It is further adjudged, decreed and ordered that the plaintiff,
The American Railroad Co. of Porto Rico, pay or cause to be paid
to the defendant, Vicente Quiñones, the sum of $300 as the value and
reasonable price of said land, and that the said defendant execute and
deliver immediately to the plaintiff herein a good and recordable title
to said property, at his own expense, without any special taxation of

costs; and it is held that the law and the facts are against the cross complaint filed by the defendant and, therefore, the same is dismissed.

"Mayagüez, January 8, 1909. (Signed) Luis Campillo, Acting Judge. Attest: Tomás C. Vera."

Counsel for the defendant took an appeal from said decision to this Supreme Court, which must now be decided by us.

The appellant alleges as the ground of his appeal that the judgment appealed from is contrary to law in the following two respects:

1. Because it violates the fifth amendment to the Constitution of the United States and section 355 of the revised Civil Code in so far as it directs the condemnation of land without having established the necessity of the occupation of the land condemned for the purposes of the projected work.

2. Because it likewise violates the doctrine of just compensation established in the last paragraph of said section 355 and unanimously proclaimed by all courts of the United States, in allowing the defendant as the value of the land condemned the insignificant sum of $300, and, failing to consider the damages caused by the condemnation to the remainder of the estate of which said strip forms part.

Let us examine the first ground of the appeal:

The Ordinance of the Executive Council of Porto Rico of March 5, 1908, provides in the relevant portion thereof as follows:

"AN ORDINANCE GRANTING TO THE COMPAÑÍA DE LOS FERROCARRILES DE PUERTO RICO AND ITS ASSIGN, THE AMERICAN RAILROAD CO. OF PORTO RICO, THE RIGHT TO CONSTRUCT AND OPERATE A SPUR OR BRANCH TRACK FROM A POINT ON ITS MAIN LINE BETWEEN THE STATIONS OF SAN GERMÁN AND HORMIGUEROS, RUNNING IN AN EASTERLY DIRECTION TO A POINT AT OR NEAR THE WEST BANK OF THE ESTERO RIVER, EAST OF THE TOWN OF SABANA GRANDE, A DISTANCE OF ABOUT FOURTEEN (14) KILOMETERS.

"*Whereas,* Under the provisions of section one of an ordinance enacted by the Executive Council of Porto Rico on October 28, 1901, entitled 'An Ordinance granting to the Compañía de los Ferrocarriles

de Puerto Rico and to its successors and assigns the right to extend its railway lines to and between certain points in the Island of Porto Rico,' approved by the Governor of Porto Rico on October 28, 1901, it is declared that 'the extension of the lines of the grantee herein authorized, including the building of sidetracks, spurs and branch roads are matters of public interest, etc.,' and

"*Whereas,* Under the provisions of section two of the said ordinance, it is provided that nothing contained therein shall be held or construed to give to the grantee the right to appropriate or use, either for its main track or for any switch or sidetrack, spur or branch, any portion of the public highway or other public property without the consent of the Executive Council first had and obtained; and

"*Whereas,* The said Compañía de los Ferrocarriles de Puerto Rico or its assign, the American Railroad Co. of Porto Rico, desires to construct and operate a branch track from a point on its main line between the stations of San Germán and Hormigueras, running in an easterly direction to a point at or near the west bank of the Estero River;

*Now, therefore, be it enacted by the Executive Council of Porto Rico:*

Section 1.—That the said Compañía de los Ferrocarriles de Puerto Rico and its assign the American Railroad Co. of Porto Rico, may construct and operate a branch track or spur running from a point on the main line of the said railroad now operated by the American Railroad Co. of Porto Rico, between the stations of San Germán and Hormigueros, running in an easterly direction to a point at or near the west bank of the Estero River east of the town of Sabana Grande, a distance of about fourteen (14) kilometers.

"Section 2.—That the said branch or spur shall be constructed and operated in all respects in accordance with the terms and conditions of the ordinance above-mentioned, and the rights and privileges herein granted shall be taken and deemed to be subject to all of the terms and provisions thereof, as if all the terms of the said ordinance had been incorporated herein.

"Section 3.—That the plans and specifications for this extension and the manner of construction thereof shall be submitted to the Commissioner of the Interior of Porto Rico and be approved by him before work shall be begun. Said extension shall be constructed and maintained by the grantee in such manner and condition as may be prescribed by the Commissioner of the Interior of Porto Rico or his authorized agent or agents, for the purpose of securing compliance with these conditions.

"Done in open session of the Executive Council this the fifth day of March A. D., 1908. (Signed) W. F. Willoughby, President of the Executive Council. Approved this 10th day of March, 1908. (Signed) Regis H. Post, Governor of Porto Rico. Approved this the 19th day of March, 1908. (Signed) Theodore Roosevelt, President of the United States."

The record does not contain the ordinance of October 28, 1901, which declared of public interest the extension of the lines which it authorizes, including the construction of spurs and branches, and for this reason it is difficult for us to arrive at a certain and indisputable conclusion that the branch between San Germán and Hormigueros referred to in the ordinance of March 5, 1908, is included among the branches which have been declared of public interest by the said ordinance of October 28, 1901.

But admitting that the construction of said branch has been declared of public interest, we would still find that the land which was to be the subject of condemnation to permit such construction had not been fixed as required by the Act approved March 12, 1908, to amend the Act approved March 12, 1903, to provide for the condemnation of private property for the purposes and under the conditions therein named.

Sections two and four of the Act of March 12, 1903, were amended by that of March 12, 1908, in the following form:

"Section 2.—That private property, and also that defined in the second paragraph of section 328 of the Civil Code as *bienes patrimoniales* may be taken, damaged or destroyed in whole or in part, or a permanent or temporary easement or servitude may be imposed thereon for lawful purposes when declared of public utility by the Executive Council. The declaration of public utility shall be made by the Executive Council, upon hearing in all cases such parties as may desire to be heard as to the advisability of making such declaration and as to the necessity, for a better public service and for the furtherance of the proposed work, of the condemnation or condemnations of such private property as shall have to be taken, or of the easements or servitudes with which such private property shall have to be encumbered. The Executive Council on making the declaration

that a certain work is of public utility, shall describe specifically the property which is to be condemned or encumbered for the purposes of said work.

"Section 4.—Where a work has been declared of public utility and, for any reason, the owners of the property to be condemned refuse to consent to such condemnation or condemnations as may be required, a cause of action shall thereby accrue to the person who is to perform said work, who may bring said action against the said owners in the district court for the judicial district within which the whole or part of said property is situated, in the regular manner for the commencing of actions provided by the Code of Civil Procedure. Should such action be brought as aforesaid, a copy of the declaration of public utility made by the Executive Council shall be inserted in full in, or shall accompany, the complaint or a certified copy attached thereto and the plaintiff shall make a deposit of such amount as he may be willing to pay for the property which is to be the subject of condemnation."

The provisions transcribed went into effect on March 12, 1908, when the act of which they form part was approved; the complaint was filed on June 8 of said year—that is to say, nearly three months after the approval of said act, and the plaintiff should have been governed thereby as it was in the exercise of its action, waiving the proceedings repealed by the previous Act of March 12, 1903.

It is true that under the said Act of March 12, 1903, it did not devolve on the Executive Council to determine the land which was to be condemned by reason of public utility and for this reason the ordinance above-transcribed of March 5, 1908, could not contain such determination; but if the action seeking the condemnation was instituted by the plaintiff on June 8, 1908, and, therefore, had to be subject to the provisions of the Act of March 12, 1908, the provisions of which include the prescription that the complaint must embody in full the declaration of public utility made by the Executive Council, or be accompanied by a copy of such declaration in which the Executive Council must specifically describe the property which is to be condemned or encumbered, it is evident that if the plaintiff already had the declaration of pub-

lic utility of the branch in question when the Act of March 12, 1908, went into effect, it should before bringing its action on June 8, of the same year have applied to the Executive Council to have it perfect its declaration by determining the land to be condemned, and after compliance with this requisite it should have filed its complaint, inserting therein in full or presenting a copy of the declaration of public utility with the description of the property to be condemned, thus complying with the provisions of the law.

We have heretofore held in deciding the case of the *School Board of Carolina* v. *José E. Saldaña et al.,* (14 P. R. Rep., 339), instituted when the Act of March 12, 1903, was in force, and decided April 22, 1908, when said act had already been amended by the Act of March 12, 1908, that it was not possible to admit that the school board in said case, or a railway company, or any corporation in other cases, had the incontestable right to condemn in an arbitrary manner the property of a citizen through mere caprice, malice or any unjustified cause, when there was other property more suitable or adequate which could probably be acquired for less money and without the necessity of resorting to condemnation proceedings; and we expressed ourselves in those terms referring to the Condemnation Act of March 12, 1903, which did not contain any provision whatsoever relating to the right of the persons interested to oppose the expropriation.

Now the Act of March 12, 1908, has supplied the deficiencies of the previous act by providing that the persons interested should be heard on the declaration of public utility and the necessity of the condemnation, and that the Executive Council in making the declaration of the public utility of a specific work shall specifically describe the property to be condemned, and only where the owner refuses his consent to the condemnation does it devolve on the Mayagüez court, in the proper action, to determine whether the plaintiff did or did not have the right to condemn the property in question, described by the Executive Council, according to section six

of the Act of March 12, 1903, as amended by section four of the Act of March 12, 1908.

But the fact is that neither does the Condemnation Act of March 12, 1903, favor the plaintiff and respondent, because said act does not grant railway companies the right to select the lands which may suit them for their enterprises, nor has the necessity been established in this action for the condemnation applied for by the plaintiff company.

In support of what we have stated we may cite the following cases heretofore decided by this Supreme Court:

(*School Board of Carolina* v. *José E. Saldaña et al.,* [14 P. R. Rep., 339], decided April 22, 1908; *The American Railroad Co. of Porto Rico* v. *Vicente Quiñones,* [15 P. R. Rep.], decided January 11, 1909; *The American Railroad Co. of Porto Rico* v. *Juan Ortiz,* [15 P. R. Rep., 412], decided June 18, 1909.)

We consider it superfluous to discuss the part of the judgment relating to compensation, because if the condemnation does not lie it is useless to discuss the amount of the indemnity which should be paid.

For the foregoing reason, the judgment of the District Court of Mayagüez should be reversed and our decision communicated to it for the proper purposes.

*Reversed.*

Justices MacLeary, Wolf and del Toro concurred.

Mr. Justice Figueras did not take part in the decision of this case.